[No. A132798. First Dist., Div. Two. Jan. 17, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
BYRON McCLOUD, Defendant and Appellant.

**COUNSEL**

Julia J. Spikes, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Moona Nandi, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LAMBDEN, J.**—Byron McCloud appeals from the order of the trial court, following a jury trial, committing him to the custody of the former State Department of Mental Health (DMH), pursuant to provisions of the Sexually Violent Predator Act (SVPA), Welfare and Institutions Code section 6600

et seq.[1] McCloud contends that two provisions of the SVPA violate his due process and equal protection rights under the United States Constitution: (1) that commitments are for an indeterminate term, rather than for a fixed term, with the burden placed on the committee, if the DMH opposes release, to show that he or she is no longer a sexually violent predator (SVP) and (2) that when a committee petitions for release and the trial court determines that the petition is frivolous, the trial court may dismiss the petition without a hearing. Additionally, McCloud maintains that the jury's determination that he is an SVP was not supported by sufficient evidence.

We conclude that McCloud's due process claims are foreclosed by *People v. McKee* (2010) 47 Cal.4th 1172 [104 Cal.Rptr.3d 427, 223 P.3d 566] (*McKee I*). We concur with the finding of the court in *People v. McKee* (2012) 207 Cal.App.4th 1325 [144 Cal.Rptr.3d 308] (*McKee II*) (review den. Oct. 10, 2012, S204503), that the SVPA's provisions for indeterminate commitments and burden of proof do not violate a committee's right to equal protection. We conclude that substantial evidence supported the jury's determination that McCloud is an SVP. Accordingly, we affirm the order of the trial court committing McCloud to the custody of the DMH.

However, McCloud's remaining issue on appeal, that the SVPA's provision allowing dismissal of a frivolous petition for release without a hearing violates his right to equal protection, is not meritless on its face. We remand to the trial court for further proceedings regarding that issue.

## BACKGROUND

A. *Procedural Background*

On February 4, 2009, the Solano County District Attorney filed a petition to commit McCloud as an SVP, pursuant to the SVPA. The court found probable cause to hold McCloud over for trial.

McCloud filed a pretrial motion challenging the constitutionality of the SVPA. He did not seek an evidentiary hearing, but asserted "his right to raise his constitutional due process and equal protection claims in the event that he is indefinitely committed to DMH."

---

[1] Unless otherwise indicated, all subsequent code references are to the Welfare and Institutions Code.

Following a trial, the jury found that McCloud was an SVP on July 6, 2011. Accordingly, the court committed McCloud to the custody of the DMH for treatment and confinement for an indeterminate period.

On July 26, 2011, McCloud filed a timely notice of appeal.

## B. *Evidence Presented at Trial*

Psychologist Robert Owen testified as an expert for the People. McCloud had been convicted of six sexually violent offenses against six different victims. The first five offenses were committed in 1979, with McCloud breaking into the victims' homes and sexually assaulting them. The first victim was a 10-year-old girl. McCloud was convicted for these five offenses and was sent to prison, from which he was paroled in March 1991. Seven months later, when he was 37 years old, McCloud broke into the home of a 69-year-old woman and sexually assaulted her. Owen concluded that McCloud met the first criterion[2] for classification as an SVP, having served a sentence for a sexually violent offense against at least one victim.

Addressing the second criterion, Owen diagnosed appellant with paraphilia not otherwise specified (paraphilia NOS) and antisocial personality disorder (APD). He also diagnosed heroin dependence and cocaine dependence, in remission while in custody.

Dr. Owen commented, without disagreement, about a published paper concerning paraphilia NOS that suggested the diagnosis "would require considerable evidence documenting the rapes, reflected paraphilic urges and fantasies linking the coercion to arousal." Owen believed, however, that in most cases a clinician would "have to analyze [an individual's] behavior looking for patterns of conduct that might reflect underlying sexually deviant urges or fantasies." Owen believed that the fact that McCloud had committed six crimes indicated that he derived pleasure from forcing his victims to engage in sexual acts. In his 1991 offense, McCloud had the victim take off her clothes, drink whiskey, and parade through the house, while he patted her on the buttocks and talked to her about rape. McCloud told Owen that he enjoyed humiliating this victim. Owen thought it significant that McCloud talked to the victim about raping her before acting, believing that this reflected underlying urges. Owen believed that the fact that McCloud committed his sixth offense so soon after his release from prison showed "that he's probably thought about continuing with the same conduct and, in fact, did. So I think

---

[2] To classify a person as an SVP, it must be shown that (1) the person has been convicted of a sexually violent offense against one or more victims; (2) the person has a diagnosed mental disorder; and (3) the person's mental diagnosis makes him likely to engage in sexually violent criminal behavior. (§ 6600, subd. (a)(1).)

we can infer the presence of urges." In short, said Owen, "[t]he pattern of conduct is so similar in all of these cases that I think we can't conclude anything but the fact that he is aroused through coercive sexual acts with nonconsenting stranger victims."

Owen acknowledged that McCloud had not committed any offenses from 1992 to the present, but believed this was not meaningful because he was in custody the entire time. According to Owen, paraphilia tends to be a long-standing, chronic condition. The condition can wax and wane with stress, opportunity to offend, and confinement, but does not generally dissipate on its own without treatment, and McCloud had not engaged in any therapy that would alter his interest in rape, even though treatment was available to him where he was currently housed. In Owen's opinion, McCloud currently suffered from paraphilia, even if he was not exhibiting symptoms or having fantasies or urges at the moment.

For the third criterion, Owen opined that without custody and treatment, McCloud would be likely to reoffend. McCloud's APD amplified his paraphilia because his callous, impulsive nature made him more aggressive and thus predisposed him to sexually reoffend. Owen said that outpatient treatment would not be appropriate for McCloud because the pathology was too serious and deep, because McCloud had never sought outpatient sex offender treatment, and because McCloud did not believe he needed sex offender treatment. The risk assessment instruments that Owen used put McCloud in the group at high risk for reoffense.

Psychologist Garrett Essres testified as a second expert for the People. He diagnosed McCloud as currently suffering from paraphilia NOS, alcohol abuse, and APD. According to Essres, the majority of rapists are not paraphiliacs. Paraphilic rapists engage in sexually assaultive behavior because they are excited by the victim's distress, hurt, and resistance. The fact that McCloud was able to get and maintain an erection six times under these circumstances suggested he suffered from paraphilia. In addition, at least twice in his lifetime, McCloud had requested therapy, indicating that he felt he had a problem he needed help with. Other factors supporting his diagnosis included: (1) the fact that McCloud committed the first five rapes in a short period of time, indicating an intense focus on this type of behavior; (2) the fact that McCloud had a girlfriend but chose forced sex over consensual sex; and (3) the fact that McCloud returned to sexually assaultive behavior a short time after being released from a long prison sentence, this time with an elderly victim, whom most people would not see as a candidate for arousal by a man his age.

According to Essres, paraphilia tends to be a chronic, lifelong condition. McCloud was not currently exhibiting paraphilic behaviors because he was in a confined environment, but in Essres's opinion, he nevertheless currently suffered from paraphilia.

Essres testified that McCloud's disorders affected his emotional and volitional capacity and predisposed him to commit sexually violent acts. He based this opinion on McCloud's having committed such acts in the past, and being severely sanctioned, yet repeating the behavior soon after release, indicating that he had difficulty controlling his behavior. McCloud's APD helped predispose him to act on his paraphilia. In Essres's opinion, McCloud was likely to engage in sexually violent criminal predatory behavior if released into the community.

Essres used a variety of actuarial tools to assess McCloud's risk of reoffense. Each of the risk assessment tools put appellant in the high-risk category. Essres acknowledged that the Static-99, and its recent revision, the Static-2002R—both assessment tools for risk of reoffense—are only moderately accurate predictors of future risk.

McCloud presented testimony from three experts, a staff member from the hospital at which he was confined, and one of the authors of the DSM (Diagnostic and Statistical Manual of Mental Disorders).

Dr. Brian Abbott, a clinical psychologist and licensed clinical social worker, did not diagnose McCloud with paraphilia, but did find that he had APD. Abbott believed that McCloud's offending behavior was more consistent with his APD than with paraphilia NOS. He stated that to prove that someone is committing rape of a paraphilic nature, a psychologist would have to prove that there are fantasies or urges, related to engaging in nonconsenting sex, that are behind the behavior. In his opinion, the diagnosis of paraphilia could not be made based solely on behaviors, without evidence of urges or fantasies. Abbott also testified that there was no evidence of a "current" paraphilic condition or APD, as required by the statute, as McCloud had engaged in no conduct consistent with these diagnoses since at least 2000. Abbott stated that all of McCloud's criminal conduct, including the rapes, could be attributed to his APD, which the doctor considered to be in full remission. Abbott testified that neither APD nor substance abuse qualifies as a mental disorder making McCloud more likely to commit a sexually violent offense. Dr. Abbott also stated that there is no support for the assertion that paraphilia NOS tends to be chronic and lifelong.

Dr. Allen Frances, a psychiatrist and one of the authors of the DSM, testified that the diagnosis of coercive paraphilia was rejected four times

because (1) there had been little research into such a diagnosis; (2) there was no clinical need for the diagnosis; and (3) it might be used to excuse criminal behavior. He stated that the diagnosis of paraphilia NOS, for rape, would only apply to the rapist "who can't get sexually excited except as being part of rape. It has to be that specific." He believed that simple repetition of criminal behavior is common and not necessarily indicative of a mental disorder. He also believed the diagnosis of paraphilia NOS was too unreliable to be used in a forensic setting.

Dr. Benjamin Bowser, a social psychologist, conducted a social behavioral assessment that evaluated the effect of social factors which might have contributed to McCloud's behavior. This assessment found several factors that research has shown are correlated with criminal behavior: ineffective and inconsistent parenting; parental abandonment; events that caused or contributed rage and anger in McCloud; and McCloud's drug abuse.

Iris Wilkins, a registered nurse at Coalinga State Hospital, testified that patients do engage in sexually inappropriate conduct while in the hospital. However, McCloud was polite and respectful to staff and peers and had no rules violations or other behavioral issues for the six months that she had been on his treatment team.

Dr. Mary Alumbaugh, a clinical and forensic psychologist, reviewed McCloud's records. Alumbaugh initially diagnosed McCloud as suffering from paraphilia NOS for one of the probable cause hearings. However, she testified that she had changed her opinion because of recent research articles concerning the validity of diagnosing paraphilia based on coercive sexual behavior. Alumbaugh concluded that she could not infer the fantasies and urges from the behaviors alone, and therefore there was insufficient evidence of the mental component independent of the criminal acts. She no longer believed that appellant was a risk to reoffend, because he did not have a mental disorder that predisposed him to do so.

Dr. John Podboy, a clinical and forensic psychologist, testified that paraphilia NOS is not a valid diagnosis for McCloud. Even if such a diagnosis had been valid in the past, McCloud's behavior since 1992 did not support a current diagnosis of paraphilia NOS.

## DISCUSSION

I. *Statutory and Legal Background*

As originally enacted, the SVPA provided for the involuntary civil commitment of SVP's for two-year terms of confinement and treatment.

(Stats. 1995, ch. 763, § 3, p. 5922; former § 6604.) A commitment could not be extended beyond a two-year term unless a new petition was filed requesting a successive two-year commitment. (Former §§ 6604, 6604.1.) In 2006, California voters amended the SVPA by approving Proposition 83, entitled "The Sexual Predator Punishment and Control Act: Jessica's Law." (*McKee I, supra*, 47 Cal.4th at p. 1186; see Stats. 2006, p. A-299.) "[U]nder Proposition 83, an individual SVP's commitment term is indeterminate, rather than for a two-year term as in the previous version of the Act. An SVP can only be released conditionally or unconditionally if the DMH authorizes a petition for release and the state does not oppose it or fails to prove beyond a reasonable doubt that the individual still meets the definition of an SVP, or if the individual, petitioning the court on his own, is able to bear the burden of proving by a preponderance of the evidence that he is no longer an SVP. In other words, the method of petitioning the court for release and proving fitness to be released, which under the former Act had been the way an SVP could cut short his two-year commitment, now becomes the only means of being released from an indefinite commitment when the DMH does not support release." (*McKee I, supra*, 47 Cal.4th at pp. 1187–1188; see § 6604.)

 As noted by *McKee I*, SVP's continue to have the right to petition the court for conditional release or an unconditional discharge without the concurrence of the DMH. (§ 6608, subd. (a).) Once an SVP files such a petition and it is denied, the court has the right to summarily deny any subsequent petition " 'unless it contains facts upon which a court could find that the condition of the committed person had so changed that a hearing was warranted.' " (*McKee I, supra*, 47 Cal.4th at p. 1192.) Section 6608, subdivision (a), allows the court to dismiss any petition for release when the court finds the petition to be frivolous.

In *McKee I*, defendant McKee attacked the constitutionality of the amended SVPA on due process and equal protection grounds. (*McKee I, supra*, 47 Cal.4th at p. 1184.) The court rejected McKee's due process arguments (*id.* at p. 1194), but determined that SVP's are similarly situated to mentally disordered offenders (MDO's), who may be committed under the Mentally Disordered Offender Act (47 Cal.4th at p. 1203; Pen. Code, § 2960 et seq.). Because the terms of commitment for SVP's are substantially less favorable than those for MDO's, the state must provide justification for the differential treatment. (*McKee I*, at p. 1203.) The court also found that SVP's are similarly situated to those committed after a finding of not guilty by reason of insanity (NGI's) and that, as with MDO's, "the People have not yet carried their burden of justifying the differences between the SVP and NGI commitment statutes." (*Id.* at p. 1207.) The case was remanded to the trial court to

determine whether the People could demonstrate "the constitutional justification for imposing on SVP's a greater burden than is imposed on MDO's and NGI's in order to obtain release from commitment." (*Id.* at pp. 1208–1209.)

On remand, the trial court held an evidentiary hearing, following which it issued a statement of decision "finding the People had met their burden to establish, by a preponderance of the evidence, that the disparate treatment of SVP's under the Act was based on a reasonable perception of the greater and unique dangers they pose compared to MDO's and NGI's." (*McKee II, supra,* 207 Cal.App.4th at p. 1332.) On review, the appellate court affirmed the decision of the trial court: "We, like the trial court, conclude the disparate treatment of SVP's under the Act is reasonable and factually based and was adequately justified by the People at the evidentiary hearing on remand. Accordingly, we conclude the Act does not violate McKee's constitutional equal protection rights." (*Id.* at p. 1348.) The Supreme Court denied review and *McKee II* is now final.

II. *The Due Process and Equal Protection Claims Raised by* McKee I *and* McKee II

McCloud first maintains that "indeterminate commitments while placing the burden on the SVP to establish, without appointment of an expert, that he no longer meets the SVP criteria" and "summary dismissal of a petition without a hearing" violate the due process clause of the United States Constitution. These due process arguments were addressed, and rejected, by the *McKee I* court. (*McKee I, supra,* 47 Cal.4th at pp. 1188–1193.) McCloud recognizes that we are bound by *McKee I* and he raises his due process arguments here to preserve the issue for federal appeal.

McCloud also raises the same equal protection issues as those raised in *McKee I*, contending that the SVPA treats SVP's more harshly than MDO's and NGI's, who are similarly situated civil committees. Because McKee's case was not yet final, McCloud requested the same remedy that the Supreme Court accorded McKee—remand to the trial court for an evidentiary hearing. The People also requested a remand, but with direction to the trial court to stay proceedings pending finality of McKee's case. In the meantime, as noted above, McKee was afforded an evidentiary hearing in the trial court and both the trial court and appellate court rejected his equal protection arguments.

We need not repeat the evidence presented in the trial court and reviewed by the appellate court in *McKee II*. Both courts were satisfied that disparate treatment of SVP's was warranted. (*McKee II, supra,* 207 Cal.App.4th at pp. 1339–1348.) *McKee II* found substantial evidence to support a reasonable perception on the part of the electorate enacting the amended SVPA that the recidivism rate of released SVP's is greater than the rate of reoffense of other

sex offenders; that the harm suffered by victims of sex offenses is greater than that caused by other types of offenses; that SVP's pose an increased risk of harm to children; that SVP's have significantly different diagnoses from those of MDO's and NGI's; and that treatment plans, rates of compliance and success rates are significantly different. (*McKee II*, at pp. 1342–1344, 1347.)

The *McKee II* court was persuaded by the evidence that SVP's, as a class, pose a substantially greater risk to society than MDO's and NGI's, warranting the imposition of a greater burden before SVP's can be released from commitment. That court found that the evidence presented at the hearing supported the conclusion that the disparate treatment of SVP's was necessary to further the state's compelling interests in public safety and the humane treatment of those suffering mental disorders. (*McKee II, supra*, 207 Cal.App.4th at p. 1347.)

Having reviewed the evidence set out in *McKee II*, we reach the same conclusion in McCloud's case—that the evidence offered at McKee's hearing warrants the disparate treatment set out in the amended SVPA. Thus, we also reject McCloud's equal protection challenge, except for his challenge to section 6608, subdivision (a), which we discuss below.

III. *Section 6608, Subdivision (a)*

Section 6608, subdivision (a), provides, in pertinent part: "Nothing in this article shall prohibit the person who has been committed as [an SVP] from petitioning the court for conditional release or an unconditional discharge without the recommendation or concurrence of the Director of State Hospitals. If a person has previously filed a petition for conditional release without the concurrence of the director and the court determined, either upon review of the petition or following a hearing, that the petition was frivolous or that the committed person's condition had not so changed that he or she would not be a danger to others in that it is not likely that he or she will engage in sexually violent criminal behavior if placed under supervision and treatment in the community, then the court shall deny the subsequent petition unless it contains facts upon which a court could find that the condition of the committed person had so changed that a hearing was warranted. Upon receipt of a first or subsequent petition from a committed person without the concurrence of the director, the court shall endeavor whenever possible to review the petition and determine if it is based upon frivolous grounds and, if so, shall deny the petition without a hearing."

McCloud contends that the provision of section 6608, subdivision (a), that allows a court to dismiss a petition by a committee because it is based on frivolous grounds, violates both the due process and equal protection clauses

of the United States Constitution. We need not deal with McCloud's due process argument, because, as noted above, the *McKee I* court addressed that issue and found no violation of due process. (*McKee I, supra*, 47 Cal.4th at p. 1192.) However, neither *McKee I* nor *McKee II* addresses section 6608, subdivision (a), with an equal protection analysis.

McCloud contends that, as the *McKee I* court found, SVP's are similarly situated to MDO's and NGI's, but that only SVP's are "subject to having their complaints or other initial pleadings dismissed in a summary fashion, and thus, this provision is a violation of equal protection." He continues: "Here, the Legislature has enacted amendments to the [SVPA] which are contrary to the pleading rights of every other citizen in the state, as well as other mentally ill persons committed to the DMH. No other commitment scheme allows the judge to deem the petition 'frivolous' and thereby deny the petitioner a hearing."

Opposing McCloud's argument, the People contend that "[a]lthough MDO and NGI schemes contain no express provisions authorizing summary denial of applications for release, courts have inherent power to summarily deny any action that is predicated upon sham or wholly frivolous grounds."

The People support their contention by citing *Lyons v. Wickhorst* (1986) 42 Cal.3d 911, 915 [231 Cal.Rptr. 738, 727 P.2d 1019] (*Lyons*): "In the absence of express statutory authority, a trial court may, under certain circumstances, invoke its limited, inherent discretionary power to dismiss claims with prejudice. (See 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 212, pp. 517–518.) However, this power has in the past been confined to two types of situations: (1) the plaintiff has failed to prosecute diligently [citation]; or (2) the complaint has been shown to be 'fictitious or sham' such that the plaintiff has no valid cause of action [citation]." The People argue that because courts have an inherent power to summarily dismiss a frivolous claim, then, despite the provision of section 6608, subdivision (a), there is no actual difference in the actions that courts might take in response to petitions by SVP's as compared to those by MDO's or NGI's. However, the *Lyons* court went on to observe: "In those situations in which a dismissal pursuant to the court's discretionary power has been upheld, affirmance has not been without reservation. [Citation.] The courts have long recognized a policy favoring a trial on the merits." (*Lyons*, at p. 916.) Thus, even though a court might have the inherent discretionary power to dismiss a frivolous petition by an MDO or NGI, *Lyons* cautions courts to exercise this power with reticence. Section 6608, subdivision (a), on the other hand, actually encourages a court to dismiss petitions by SVP's, without a hearing, if it determines the petition to be frivolous.

The People cast McCloud's argument as one about a right to file a frivolous petition and argue that "indisputably baseless claims do not enjoy constitutional protection." The right at issue, however, is that of being able to appear before the court to argue that a petition, despite the court's initial determination, is not frivolous and that the committee should be permitted to proceed on the merits. While it is true that an SVP may appeal a trial court's summary dismissal of a petition because it is frivolous (*McKee I, supra*, 47 Cal.4th at p. 1192, fn. 6), the requirement that the defense of a petition as nonfrivolous take place at the appellate level is an obstacle not faced by MDO's or NGI's.

We cannot say, as the People would have us do, that McCloud's equal protection argument concerning section 6608, subdivision (a), is wholly without merit. There may well be actual disparate treatment of similarly situated persons—and if there is disparate treatment, the state may or may not be justified in so distinguishing between persons.

Anticipating a remand to the trial court on the equal protection issues raised by *McKee I*, with or without a stay until McKee's case was final, neither party has fully briefed this issue because, unless we found it completely without merit, it would have been part and parcel of the issues to be determined on remand. Accordingly, we remand this case to the trial court so that both parties may fully brief and argue McCloud's claim that section 6608, subdivision (a), violates the equal protection clause.

## IV. *Sufficiency of the Evidence*

McCloud contends that insufficient evidence supported the jury's finding that he is an SVP. "In reviewing the evidence sufficient to support a commitment under [the SVPA], 'courts apply the same test as for reviewing the sufficiency of the evidence to support a criminal conviction.' " (*People v. Carlin* (2007) 150 Cal.App.4th 322, 333 [58 Cal.Rptr.3d 495].) "Thus, this court must review the entire record in the light most favorable to the judgment to determine whether substantial evidence supports the determination below. [Citation.] To be substantial, the evidence must be ' "of ponderable legal significance . . . reasonable in nature, credible and of solid value." ' " (*People v. Mercer* (1999) 70 Cal.App.4th 463, 466 [82 Cal.Rptr.2d 723].)

The jury was instructed that, in order to prove that McCloud is an SVP, the People must prove, beyond a reasonable doubt, that (1) McCloud "had been convicted of committing sexually violent offenses against one or more victims"; (2) McCloud "currently has a diagnosed mental disorder"; and (3) "[a]s a result of that diagnosed mental disorder, [McCloud] is a danger to the

health and safety of others because it is likely that he will engage in sexually violent predatory criminal behavior." (See § 6600, subd. (a)(1).) The jury was also instructed that "[t]he term diagnosed mental disorder includes conditions either existing at birth or acquired after birth that affect a person's ability to control emotions and behavior and predispose that person to commit criminal sexual acts to an extent that makes him or her a menace to the health and safety of others." (See § 6600, subd. (c).)

## A. *Evidence of a Current Mental Condition*

McCloud argues that "based on the evidence presented by the State, there is no way any rational trier of fact could have found that [McCloud] currently suffers from a mental condition that causes him serious difficulty controlling his behavior." McCloud's reasoning for this conclusion proceeds as follows: (1) the jury was instructed that it could "not conclude that [McCloud] is a sexually violent predator based solely on his alleged prior convictions without additional evidence that he currently has the required mental disorder"; (2) the additional evidence required for the jury's conclusion that McCloud is an SVP came in the form of the state's two expert witnesses; (3) the opinions of the expert witnesses that McCloud currently suffers from paraphilia NOS were based on his criminal history, and not on evidence that McCloud currently fantasizes about rape; and (4) therefore, because the experts' diagnoses were based on McCloud's criminal history, and not on additional considerations, the jury actually had no additional evidence that McCloud currently has the required mental disorder. McCloud concludes: "The experts' opinion that [McCloud] has paraphilia, NOS, was based solely on the crimes for which [McCloud] had been convicted. The record is devoid of any evidence to support that [McCloud] is *currently* suffering from a mental condition that makes it difficult for him to control his behavior and therefore, likely to re-offend."

McCloud mischaracterizes the evidence presented at trial because Owen's and Essres's diagnoses of paraphilia NOS were not based solely on McCloud's prior convictions. Other factors considered by these experts included the fact that McCloud had committed a number of rapes within a short time, demonstrating an intense focus on that type of behavior; McCloud's ability to get and maintain an erection on numerous occasions in the face of the victim's resistance and distress; McCloud's choice of forced sex when he had a girlfriend and the opportunity of consensual sex; the fact that McCloud repeated his sexually assaultive behavior a short time after release from a long prison sentence; and McCloud's admission that he enjoyed humiliating his last victim. Finally, at least twice in his lifetime, McCloud had requested therapy, indicating that he believed he had a problem he needed help with.

Because the opinions of Owen and Essres were not based solely on the fact of McCloud's prior convictions, we easily find that their evidence, summarized more fully above, constituted substantial evidence that McCloud currently suffers from a mental condition that predisposes him to commit criminal sexual acts.

### B. *Evidence of Serious Difficulty Controlling Behavior*

McCloud maintains that even if there was sufficient evidence of a current mental condition, there was no evidence that he is unable to control his behavior, and thus no evidence that he is likely to reoffend. He contends that his crimes were committed long ago and that since 2000 his time in prison has been without incident.

Both Owen and Essres expressed their opinion that McCloud's paraphilia NOS affected his volitional capacity and predisposed him to commit sexually violent acts. McCloud's difficulty controlling his behavior was evidenced by the fact that he had committed rapes in the past, had been sanctioned with long-term imprisonment, and had nevertheless reoffended shortly after his release. McCloud's APD also impaired his volitional capacity, making him more impulsive and therefore more likely to act on his paraphilic urges.

That McCloud had not exhibited difficulty controlling his behavior while in custody did not alter their opinion concerning his impaired volitional capacity because "[i]n a confined environment the demonstration of behaviors can be highly restricted." We note that section 6600, subdivision (d), provides: " 'Danger to the health and safety of others' does not require proof of a recent overt act while the offender is in custody."

██ Owen and Essres explained that paraphilia NOS is chronic and generally does not abate without intervention. Although McCloud had not exhibited recent behavior demonstrating an inability to control his actions, Owen's and Essres's opinion that McCloud did lack volitional capacity was based on inferences from McCloud's past behavior and from the nature of his currently diagnosed mental conditions that a reasonable jury could accept. We conclude that the testimony of Owen and Essres constituted substantial evidence supporting the jury's finding that McCloud is a danger to the health and safety of others because it is likely that he will reoffend by engaging in sexually violent acts.

## DISPOSITION

The order of the trial court committing McCloud to the custody of the DMH is affirmed. The case is remanded for further proceedings on McCloud's contention that section 6608, subdivision (a), violates his right to equal protection.

Kline, P. J., and Richman, J., concurred.

A petition for a rehearing was denied February 14, 2013, and the petitions of both appellant and respondent for review by the Supreme Court were denied May 22, 2013, S208845.