Filed 6/20/13  P. v. Redding CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BILLY RAY REDDING,<br><br>    Defendant and Appellant. | 2d Crim. No. B237901<br>(Super. Ct. No. PS027014)<br>(Ventura County) |

Billy Ray Redding appeals from the judgment and order committing him as a sexually violent predator (SVP) within the meaning of the Sexually Violent Predators Act.  (Welf. & Inst. Code, § 6600 et seq., Act or SVP Act.)  He contends the SVP Act violates his right to equal protection under both the state and federal constitutions because it treats SVPs differently from those involuntarily committed for treatment as mentally disordered offenders (MDOs) and those found not guilty by reason of insanity (NGIs).  He further contends the Act violates his right to due process, double jeopardy protections and the constitutional prohibitions against ex post facto laws.

We have considered these arguments in light of our Supreme Court's recent opinion in *People v. McKee* (2010) 47 Cal.4th 1172 (*McKee I*), the Court of Appeals' now final opinion on remand in the same case, *People v. McKee* (2012) 207 Cal.App.4th 1325 (*McKee II*), and the parties' supplemental letter briefs addressing that opinion.  We concur with the holding in *McKee II*.  In doing so, we join the Courts of

1

Appeal in *People v. McDonald* (March 28, 2013, G044963) ___ Cal.App.4th ___ [2013 WL 1246831], *People v. Landau* (2013) 214 Cal.App.4th 1, *People v. McCloud* (2013) 213 Cal.App.4th 1076, and *People v. McKnight* (2012) 212 Cal.App.4th 860, in holding that the SVP Act's provisions concerning the indeterminate commitment of SVPs and the allocation of the burden of proof do not violate the equal protection rights of the person named in the SVP petition. Accordingly, we affirm the order of the trial court committing appellant to the custody of the Department of Mental Health (DMH) as an SVP.

*Facts*

Appellant does not contest the trial court's finding that he meets the statutory definition of an SVP. Rather, he contends the SVP Act violates his federal and state constitutional rights to equal protection because it treats SVPs differently from mentally disordered offenders (MDOs) and persons found not guilty by reason of insanity (NGIs). Consequently, we provide only a very brief summary of the facts.

The parties stipulated at appellant's nonjury SVP recertification trial that appellant meets the first statutory criteria for an SVP commitment because he has been convicted of more than one qualifying sex crime. Two clinical psychologists, Jeremy Coles, Ph. D. and Dr. Robert Owen, Ph. D., evaluated appellant and diagnosed him with two mental disorders: paraphilia not otherwise specified (sex with nonconsenting partners) and a personality disorder with anti-social and narcissistic traits.[1] Both also concluded that appellant posed a high risk of sexually reoffending.

Seven hospital staff members testified on behalf of appellant. None of the witnesses opined that he was ready for release, but they described his positive behavior in the hospital and his participation in treatment. The defense witnesses assessed appellant's risk of reoffending to be lower than the evaluators had.

---

[1] Coles concluded appellant had a personality disorder, not otherwise specified, with anti-social and narcissistic traits. Owen diagnosed appellant with anti-social personality disorder.

2

At the conclusion of the nonjury trial, the trial court found that appellant continues to qualify as an SVP. The trial court ordered appellant committed to the Department of Mental Health ("DMH") for an indeterminate term.

*Discussion*

As our Supreme Court explained in *McKee I*, California voters approved Proposition 83 in 2006, amending the SVP Act to change the SVP commitment "from a two-year term, renewable only if the People prove to a jury beyond a reasonable doubt that the individual still meets the definition of an SVP, to an indefinite commitment from which the individual can be released if he proves by a preponderance of the evidence that he no longer is an SVP." (*McKee I*, *supra,* 47 Cal,4th at pp. 1183-1184.) SVPs are thus treated differently from MDOs and NGIs, raising equal protection concerns for our Supreme Court. It concluded: "[T]he state has not yet carried its burden of demonstrating why SVPs, but not any other ex-felons subject to civil commitment, such as mentally disordered offenders, are subject to indefinite commitment . . . . [W]e remand to the trial court to permit the People the opportunity to justify the differential treatment in accord with established equal protection principles." (*Id.* at p. 1184.)

On remand, the trial court held a 21-day evidentiary hearing and concluded the state had carried its burden to justify the disparate treatment of SVPs. That judgment was affirmed by the Court of Appeal in *McKee II, supra,* 207 Cal.App.4th 1325). Appellant urges us to reject the legal analysis in *McKee II* as "badly flawed" and to conclude instead that the SVP Act violates his right to equal protection because it treats SVPs differently from MDOs and NGIs without adopting the least restrictive means available to address the state's compelling interests in public safety and the humane treatment of the mentally ill. We recognize that we are not bound by *McKee II*. (*Sarti v. Salt Creek Ltd.* (2008) 167 Cal.App.4th 1187, 1193 ["there is no horizontal stare decisis in the California Court of Appeal"].) However, we are persuaded by its equal protection analysis and adopt it as our own.

The Court of Appeal in *McKee II* independently reviewed the evidence presented to the trial court. Among other things, the evidence presented in *McKee II*

3

supported the conclusion that "victims of sex offenses suffer unique and, in general, greater trauma than victims of nonsex offenses." (*Mcee II, supra* 207 Cal.App.4th. at p. 1342.) SVPs pose a higher risk of sexual reoffending than do MDOs or NGIs. Their recidivism rates are equal to, or slightly higher than those of sex offenders who do not qualify as SVPs. (*Id.*) Most SVPs are diagnosed with different mental illnesses than are MDOs and NGIs. Their treatment plans also differ, as do their rates of compliance and success in treatment. (*Id.* at p. 1347.) "In particular, SVP's are less likely to participate in treatment, less likely to acknowledge there is anything wrong with them, and more likely to be deceptive and manipulative." (*Id.*) There is also evidence to support "a reasonable inference that an indeterminate, rather than a determinate (e.g., two-year) term of civil commitment supports, rather than detracts from, the treatment plans for SVPs." (*Id.*)

After reviewing this evidence, the Court of Appeal concluded, "[T]he People on remand met their burden to present substantial evidence, including medical and scientific evidence, justifying the amended Act's disparate treatment of SVP's (e.g., by imposing indeterminate terms of civil commitment and placing on them the burden to prove they should be released). (*McKee, supra,* 47 Cal.4th at p. 1207.) The People have shown that, 'notwithstanding the similarities between SVP's and MDO's [and NGI's], the former as a class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society.' (*Id.* at p. 1208.) The People have shown 'that the inherent nature of the SVP's mental disorder makes recidivism as a class significantly more likely[;] ... that SVP's pose a greater risk [and unique dangers] to a particularly vulnerable class of victims, such as children [;]' and that SVP's have diagnostic and treatment differences from MDO's and NGI's, thereby supporting a reasonable perception by the electorate that passed Proposition 83 that the disparate treatment of SVP's under the amended Act is necessary to further the state's compelling interests in public safety and humanely treating the mentally disordered. (*Ibid.*)" (*McKee II, supra,* 207 Cal.App.4th at p. 1347.) Having concluded that "the disparate treatment of SVP's under the Act is reasonable and

4

factually-based and was adequately justified by the People at the evidentiary hearing on remand," the court in *McKee II* held the Act does not violate the equal protection rights of SVPs. (*McKee II, supra*, 207 Cal.App.4th at p. 1348.)

The court in *McKee II* also rejected the assertion that the SVP Act violated the appellant's equal protection rights because it failed to adopt the least restrictive means available to further the state's compelling interests. Relying on *In re Moye* (1978) 22 Cal.3d 457, the court in *McKee II* held, "in strict scrutiny cases, the government must show both a compelling state interest justifying the disparate treatment *and* that the disparate treatment is necessary to further that compelling state interest. [Citations.] We are unpersuaded that the electorate that passed Proposition 83 in 2006 was required to adopt the least restrictive means available (e.g., a two-year or other determinate term of civil commitment) in disparately treating SVP's and furthering the compelling state interests of public safety and humane treatment of the mentally disordered." (*Id.* at p. 1349.)

We agree with this analysis. This case does not involve a suspect classification of persons based on an immutable characteristic such as race or ethnicity. As a consequence, the "least restrictive means" test does not apply. (See, e.g., *Connerly v. State Personnel Bd.* (2001) 92 Cal.App.4th 16, 33-35.) It is sufficient that the means adopted by the SVP Act are a necessary means of advancing the state's compelling interests in public safety and the humane treatment of the mentally ill. (*In re Moye, supra*, 22 Cal.3d at p. 465.) The evidence before the trial court in *McKee II* demonstrated that the treatment of SVPs takes longer than does the treatment of MDOs or NGIs. In addition, treatment plans for SVPs rely less on medication and more on psychosocial interventions designed to provide SVPs with tools to reduce their risk of sexually reoffending. (*McKee II, supra,* 207 Cal.App.4th at pp. 1345-1347.) Expert witnesses at the *McKee II* trial also opined that the indeterminate commitment term provided for in the SVP Act supports the treatment plan because it provides SVPs with a greater incentive to participate in treatment. By contrast, the two-year determinate terms often interfered with treatment because SVPs were often required to be absent from treatment for months

at time, to attend their court hearings.  (*Id.* at pp. 1345-1346.)  This evidence supports the conclusion that the provisions of the SVP Act are a necessary means of advancing the compelling state interests at stake.  (*Id.* at p. 1349.)

Appellant further contends the SVP Act violates his right to due process, to be protected against *ex post facto* laws and to be protected against double jeopardy.  He correctly concedes these same contentions were rejected by our Supreme Court in *McKee I* and that we are bound by that decision.

*Disposition*

The December 9, 2011 order of commitment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

6

Kevin G. Denoce, Judge

Superior Court County of Ventura

_____

Rudy Craft, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.