Filed 9/17/13  P. v. Smith CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>HERMAN J. SMITH,<br><br>    Defendant and Appellant. | D063112<br><br><br>(Super. Ct. No. MH99951) |

APPEAL from an order of the Superior Court of San Diego County, David M. Gill, Judge.  Affirmed.

Laurel M. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Bradley A. Weinreb and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

Herman J. Smith was committed for an indeterminate term to the custody of the State Department of Mental Health (DMH), now the State Department of State Hospitals,

under the Sexually Violent Predator Act (SVPA).  (Welf. & Inst. Code, § 6600 et seq.)

Smith appeals, contending that treating sexually violent predators (SVP's) differently

from mentally disordered offenders (MDO's) and persons found not guilty by reason of

insanity (NGI's) violates his constitutional right to equal protection, that we failed to

apply the correct standard of review and strict scrutiny requirements, and that his case is

distinguishable because his victims were adults.  We have considered these arguments in

light of our Supreme Court's opinion in *People v. McKee* (2010) 47 Cal.4th 1172

(*McKee I*), and this court's final opinion on remand in the same case, *People v. McKee*

(2012) 207 Cal.App.4th 1325 (*McKee II*).  Based on these opinions, we affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 1993 Smith pleaded guilty to the crimes of rape by force or fear,

sodomy by force or fear, and oral copulation by force or fear.  In addition, he admitted to

a prior felony conviction for rape in 1973.  In September 2009 a jury found Smith to be

an SVP within the meaning of the SVPA and subject to involuntary commitment for an

indeterminate term.[1]  Smith appealed the 2009 commitment order on several grounds.

We rejected Smith's contentions, except for his challenge to the indeterminate

---

[1]     In November 2006 California voters passed Proposition 83, entitled "The Sexual
Predator Punishment and Control Act:  Jessica's Law" amending the SVPA effective
November 8, 2006.  (*McKee I*, *supra*, 47 Cal.4th at p. 1183.)  Proposition 83 changed an
SVP commitment from a two-year term to an indefinite commitment and shifted the
burden of proof for release to the SVP (*id.* at pp. 1183-1184), unless the DMH authorizes
a petition for release (*id.* at p. 1187).  In contrast, an MDO is committed for a one-year
period and thereafter has the right to be released unless the People prove beyond a
reasonable doubt that he or she should be recommitted for another year.  (Pen. Code,
§ 2972.)

2

commitment on equal protection grounds.[2]  Based on *McKee I*, which held that the 2006

amendments to the SVPA may violate equal protection (*McKee I*, *supra*, 47 Cal.4th at

p. 1184), we reversed in part and remanded to the trial court with directions to suspend

further proceedings pending finality of the proceedings on remand in *McKee I*.[3]  In July

2012 we issued our opinion in *McKee II*, upholding the constitutionality of the amended

SVPA on equal protection grounds.  The Supreme Court denied review in *McKee II*,

rendering the opinion final (*McKee II*, *supra*, 207 Cal.App.4th 1325, review den. Oct. 10,

2012, S204503), and the trial court subsequently re-imposed the order for Smith to be

committed to an indeterminate term.

### DISCUSSION

Smith's constitutional argument focuses primarily on whether the amended SVPA

violates equal protection.  Smith challenges our decision in *McKee II*, arguing we

misunderstood and misapplied both the standard of review and the strict scrutiny test.

In *McKee I*, the Supreme Court held the SVPA is subject to equal protection

analysis because it "treats SVP's significantly less favorably than those similarly situated

individuals civilly committed under other statutes" including MDO's and NGI's.

---

[2]  In Respondent's brief, we grant the People's unopposed request that this court take judicial notice of its prior opinion in *People v. Smith* (D056391 April 14, 2011) [nonpub. opn.]).  (Evid. Code §§ 451, 452, 459.)

[3]  The Supreme Court remanded in *McKee I* for an evidentiary hearing on whether disparate treatment for SVP's is justified.  The court transferred "grant and hold" cases under *McKee I* to the Courts of Appeal with directions to vacate their prior opinions and reconsider in light of *McKee I*.  The order expressed a desire to avoid unnecessary multiplicity of proceedings and directed this court to suspend further proceedings pending finality of the proceedings in *McKee I*.

(*McKee I*, *supra*, 47 Cal.4th at pp. 1196, 1203, 1207.) Since individuals within each of these categories "have the same interest at stake—the loss of liberty through involuntary civil commitment—it must be the case that when society varies the standard and burden of proof for SVP's . . . , it does so because of the belief that the risks involved with erroneously freeing SVP's from their commitment are significantly greater than the risks involved with freeing" other civil committees. (*Id.* at p. 1204.)

The Supreme Court remanded the case for a hearing on whether the People could justify disparate treatment for SVP's. The court instructed: "It must be shown that, notwithstanding the similarities between SVP's and [other civil committees], the former as a class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society. This can be shown in a variety of ways. For example, it may be demonstrated that the inherent nature of the SVP's mental disorder makes recidivism as a class significantly more likely. Or it may be that SVP's pose a greater risk to a particularly vulnerable class of victims, such as children. Of course, this latter justification would not apply to SVP's who have no history of victimizing children. But in the present case, McKee's previous victims were children. Or the People may produce some other justification." (*McKee I*, *supra*, 47 Cal.4th at p. 1208, fn. omitted.)

After remand, the superior court conducted a 21-day evidentiary hearing on the justification of disparate treatment for SVP's and concluded the People had met their burden. On appeal, we reviewed the matter de novo, which was the correct standard of review. (*McKee II*, *supra*, 207 Cal.App.4th at p. 1338.) Smith contends we applied the

4

substantial evidence test instead of de novo review. He is mistaken. In *McKee I*, he singles out the reference to " ' "reasonable inferences based on substantial evidence" ' " without reading the context of the passage: "When a constitutional right, such as the right to liberty from involuntary confinement, is at stake, the usual judicial deference to legislative findings gives way to *an exercise of independent judgment* of the facts to ascertain whether the legislative body ' "has drawn reasonable inferences based on substantial evidence." ' " (*McKee I*, *supra*, 47 Cal.4th at p. 1206, italics added.) In *McKee II*, we concluded "[t]he People have shown 'that the inherent nature of the SVP's mental disorder makes recidivism as a class significantly more likely[;] . . . that SVP's pose a greater risk [and unique dangers] to a particularly vulnerable class of victims, such as children'; and that SVP's have diagnostic and treatment differences from MDO's and NGI's, thereby supporting a reasonable perception by the electorate . . . that the disparate treatment of SVP's under the amended [SVPA] is necessary to further the state's compelling interests in public safety and humanely treating the mentally disordered." (*McKee II*, *supra*, 207 Cal.App.4th at p. 1347.) The Supreme Court denied a petition for review, making *McKee II* final. (*McKee II*, review den. Oct. 10, 2012, S204503.)

This court has, of course, followed *McKee II*, and other Courts of Appeal have as well. (See, e.g., *People v. McDonald* (2013) 214 Cal.App.4th 1367, 1376-1382; *People v. Landau* (2013) 214 Cal.App.4th 1, 47-48; *People v. McCloud* (2013) 213 Cal.App.4th 1076, 1085-1086; *People v. McKnight* (2012) 212 Cal.App.4th 860, 863-864.) While it is clear Smith believes the evidence relied on in *McKee II* is insufficient to justify disparate treatment of SVP's, we have carefully evaluated it and conclude otherwise.

5

Smith argues the strict scrutiny test requires that only the least restrictive means available to meet the state's compelling purpose will pass constitutional muster. He ignores, however, that the Supreme Court in *McKee I* did not require such a finding to justify disparate treatment of SVP's, and this court in *McKee II* expressly rejected that argument, concluding the least restrictive means available requirement applies only to disparate treatment of a suspect class. (*McKee II*, *supra*, 207 Cal.App.4th at p. 1349.) Our colleagues in Division Three also rejected the claim that strict scrutiny requires the least restrictive means: " '[I]n strict scrutiny cases, the government must show both a compelling state interest justifying the disparate treatment *and* that the disparate treatment is necessary to further that compelling state interest. [Citations.] We are unpersuaded . . . that Proposition 83 . . . was required to adopt the least restrictive means available.' " (*People v. McDonald*, *supra*, 214 Cal.App.4th at p. 1380, quoting *McKee II*, *supra*, 207 Cal.App.4th at p. 1349.)

Smith argues his case is distinguishable from *McKee* because McKee victimized children and Smith victimized adults. While McKee had child victims, the People's evidence was not limited to child sexual abuse statistics. "[T]here is substantial evidence to support a reasonable perception by the electorate, as a legislative body, that the harm caused by child sexual abuse *and adult sexual assault* is, in general, a greater harm than the harm caused by other offenses and is therefore deserving of more protection." (*McKee II*, *supra*, 207 Cal.App.4th at pp. 1343-1344, italics added.) Further, "'[i]t is plain that *McKee II* is not to be restricted to Mr. McKee alone or only to those SVP's convicted of crimes against children, like him, but rather its holding applies to the class of SVP's as

6

a whole." (*People v. McDonald*, *supra*, 214 Cal.App.4th at p. 1378, quoting *People v. McKnight*, *supra*, 212 Cal.App.4th at pp. 863-864.) Smith's arguments fail to establish the current version of the SVPA violates equal protection of the law.[4]

DISPOSITION

The order is affirmed.

McCONNELL, P. J.

WE CONCUR:

HALLER, J.

O'ROURKE, J.

---

[4] Smith also contends he should have an opportunity to litigate his case. He fails, however, to explain how the facts in his case are so different from those presented in *McKee II* as to warrant an individualized adjudication of his equal protection claim. "The Supreme Court's emphasis on classwide proof, together with its suspension of activity in grant-and-hold cases to avoid an unnecessary multiplicity of proceedings, demonstrates to us the Supreme Court intended the equal protection challenge to the [SVPA] be resolved on a classwide basis in a single case." (*People v. McDonald*, *supra*, 214 Cal.App.4th at p.1378.) The People's evidence in *McKee II* addressed the justifications for treating SVP's differently from MDO's and NGI's; the evidence presented was not specific to the particular facts of McKee's crimes.