Filed 3/4/24  P. v. Mendoza CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>RAUL ISMAEL MENDOZA,<br><br>　　Defendant and Appellant. | F084290<br><br>(Super. Ct. No. MCR021840)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Michael J. Jurkovich, Judge.

Linda J. Zachritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Clara M. Levers and Julie A. Hokans, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

On September 12, 2019, the Madera County District Attorney filed a petition to commit defendant, Raul Mendoza, to the Department of State Hospitals (DSH) pursuant to the Sexually Violent Predator Act (SVPA) (Welf. & Inst. Code, § 6600, et seq.[1]).  On April 8, 2022, a jury found that defendant qualified as a sexually violent predator.  On appeal, defendant argues there was insufficient evidence to support "a finding of the predatory nature of potential future sexually violent behavior."  The People disagree.  We affirm.

## PROCEDURAL HISTORY

On June 17, 2005, defendant was convicted of engaging in three or more acts of sexual abuse of a child under the age of 14, and he was sentenced to prison.  On September 12, 2019, the Madera County District Attorney filed a petition to commit defendant to the DSH pursuant to the SVPA.  On April 5, 2022, a jury found that defendant qualified as a sexually violent predator, and he was committed to the DSH for an indeterminate term.  On April 26, 2022, defendant filed a notice of appeal.

## FACTUAL SUMMARY[2]

*The People's Case*

On July 18, 2005,[3] defendant was convicted of continuous sexual abuse of a child under the age of 14, in violation of Penal Code section 288.5, subdivision (a).  The victim was the daughter of defendant's brother's girlfriend.  This was a qualifying sexually violent offense under section 6600.

---

[1]    All further undesignated statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]    Defendant only challenges the sufficiency of the evidence as to the predatory nature of potential future sexually violent behavior, so we focus the factual summary on evidence related to this element.

[3]    Dr. Eric Simon testified that the date of conviction was July 18, 2015.  However, according to the redacted report and recommendation of the probation officer, which was admitted into evidence, defendant was convicted on June 17, 2005.  He was sentenced on July 18, 2015.

Additionally, defendant was arrested and sent to juvenile hall for sexually abusing his sister. The abuse started when she was approximately five years old and defendant was approximately 10 years old.[4]

Dr. Eric Simon, a psychologist, testified on behalf of the People. Dr. Simon was a Sexually Violent Predator (SVP) evaluator for the DSH. Dr. Simon evaluated defendant as a potential SVP. In so doing, he reviewed, among other things, the probation officer's report related to the qualifying offense, defendant's rap sheet, and medical records. He also conducted a clinical interview with defendant.

Dr. Simon diagnosed defendant with, among other things, pedophilic disorder, which is a qualifying mental disorder under section 6600. Additionally, Dr. Simon concluded that, if defendant were released, he would likely commit a future sexually violent offense. Dr. Simon further concluded that defendant qualified as an SVP.

As to the predatory nature of potential future sexually violent behavior by defendant, Dr. Simon testified that future offenses would likely be predatory based on defendant "having committed at least one predatory sex offense," and because defendant's "access to the new victim pool would likely be nonfamilial victims."

Dr. Kathleen Longwell, a psychologist, also testified on behalf of the People. Dr. Longwell had contracts to conduct SVP evaluations for the DSH, and she evaluated defendant as a potential SVP. In so doing, she reviewed, among other things, defendant's state prison central file, the probation officer's report related to the qualifying offense, defendant's rap sheet, medical records, and psychiatric records. She also conducted an interview with defendant.

Dr. Longwell diagnosed defendant with, among other things, pedophilic disorder, which is a qualifying mental disorder under section 6600. Dr. Longwell concluded that

---

[4] There was conflicting evidence as to the timeframe of the sexual abuse and defendant's age when the conduct occurred. However, these conflicts are not relevant to the analysis.

"there is a serious and well-founded risk that [defendant] will commit another sexually violent and predatory offense in the future without appropriate treatment and custody."

As to the predatory nature of potential future sexually violent behavior by defendant, Dr. Longwell testified that future offenses would likely be predatory because defendant's most recent victim was not related to him by blood, and he began to sexually molest her shortly after moving into the family house.

*Defendant's Case*

Dr. Dana Putnam, a psychologist, testified on behalf of defendant. Dr. Putnam was an SVP evaluator for the DSH. Dr. Putnam evaluated defendant as a potential SVP. In so doing, he reviewed, among other things, the probation officer's report related to the qualifying offense, documents regarding defendant's behavior while in prison, and documents regarding defendant's criminal history. He also conducted an interview with defendant.

As to the predatory nature of potential future sexually violent behavior by defendant, Dr. Putnam testified that he had no reason to conclude that future offenses would be predatory because defendant's past offenses were not predatory. The first victim was defendant's sister. The victim of the qualifying offense was not a stranger or casual acquaintance, and Dr. Putnam had no information suggesting that the relationship with this victim was established or promoted for the primary purpose of victimization.

Dr. Putnam also testified that defendant did not have a qualifying mental disorder under section 6600.

Defendant testified on his own behalf. Defendant testified that he and his sister orally copulated and fondled each other's genitals when she was six or seven and he was 13 or 14. This occurred approximately three times.

Defendant further testified that he moved in with his oldest brother when defendant was around 24. Defendant's brother's girlfriend and her six children also lived there.

4.

Defendant would show the children movies and "just let them be kids." One of the children was six years old, and defendant referred to this child as his niece.

Finally, defendant testified that he started partying, drinking, and doing drugs with his brother's friends. Defendant sexually abused the six-year-old child because he was "not in [his] right state of mind," he "lost control with the drugs and alcohol," and he wanted "to release [his] sexual urges." However, defendant was not attracted to children. If defendant was not on drugs or alcohol, he would not have sexually abused the six-year-old child.

## DISCUSSION

Defendant argues that the evidence was insufficient to prove that any future sex offense would be predatory, and that the judgment should thus be reversed.

### I. APPLICABLE LAW AND STANDARD OF REVIEW

The SVPA defines "[s]exually violent predator" as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).)

"In order to commit someone under the [SVPA], the state must establish four conditions: (1) the person has previously been convicted of at least one qualifying 'sexually violent offense' listed in section 6600, subdivision (b) [citation]; (2) the person has 'a diagnosed mental disorder that makes the person a danger to the health and safety of others' [citation]; (3) the mental disorder makes it likely the person will engage in future acts of sexually violent criminal behavior if released from custody [citation]; and (4) those acts will be predatory in nature [citation]. Civil commitment can commence only if, after a trial, the trier of fact finds beyond a reasonable doubt that each of these four requirements is met."[5] (*Walker v. Superior Ct.*, *supra*, 12 Cal.5th at p. 190.)

---

[5] "[A] person is 'likely [to] engage in sexually violent criminal behavior' if at trial the person is found to present a *substantial danger*, that is, a *serious and well-founded risk*, of committing such crimes if released from custody." (*People v. Roberge* (2003) 29 Cal.4th 979, 988, fn. omitted.)

Under the SVPA, " '[p]redatory' means an act is directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual with whom a relationship has been established or promoted for the primary purpose of victimization." (§ 6600, subd. (e).)

"In reviewing the evidence sufficient to support a commitment under [the SVPA], 'courts apply the same test as for reviewing the sufficiency of the evidence to support a criminal conviction.' " (*People v. Carlin* (2007) 150 Cal.App.4th 322, 333; *People v. McCloud* (2013) 213 Cal.App.4th 1076, 1088.) When evaluating a sufficiency of evidence claim, " 'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find [that defendant is an SVP] beyond a reasonable doubt.' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507.) "The test for evaluating a sufficiency of evidence claim is deferential." (*People v. Flores* (2020) 9 Cal.5th 371, 411.) "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence." (*People v. Medina* (2009) 46 Cal.4th 913, 919.) "We must also 'accept logical inferences that the jury might have drawn from the circumstantial evidence.' " (*Flores*, *supra*, at p. 411.) "The [judgment] shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the judgment]." ' " (*Cravens*, *supra*, at p. 508.)

II.    ANALYSIS

Both of the People's experts testified that future offenses would likely be predatory. According to Dr. Simon, they would likely be predatory based on defendant "having committed at least one predatory sex offense," and because defendant's "access to the new victim pool would likely be nonfamilial victims." According to Dr. Longwell, they would likely be predatory because defendant's most recent victim was not related to him by blood and defendant began to sexually molest her shortly after moving into the family house. In reaching their conclusions, both experts interviewed defendant and reviewed numerous

6.

documents, including documents related to the prior offense they deemed predatory. Thus, the experts' testimony is reasonable, credible, and of solid value, and substantial evidence supports the judgment. (*People v. Mercer* (1999) 70 Cal.App.4th 463, 466–467 ["The credibility of the experts and their conclusions were matters resolved against defendant by the jury. We are not free to reweigh or reinterpret the evidence."].)

Defendant argues otherwise. According to defendant, the conclusions of both Dr. Simon and Dr. Longwell were "contrary to their own knowledge." Dr. Simon "neglected to tell the jury that he was aware that [defendant] knew the victim for more than a brief time, and that he baby-sat for the family, both facts that tend to negate a predatory act." Dr. Longwell testified that defendant only knew the victim for a short time before he started abusing her, even though she was aware that this was not true.[6]

Defendant's arguments misstate the record. Even assuming that Dr. Simon had an independent duty to inform the jury about the above-mentioned facts, he did so. During the course of his testimony, Dr. Simon stated that defendant told him defendant knew the victim for approximately a year and a half to two years before defendant began abusing her. Additionally, on cross-examination, Dr. Simon stated that defendant earned money by babysitting the victim. He also stated that defendant did not have any known stranger victims. Thus, Dr. Simon did not fail to tell the jury that he was aware of this information.[7] As to Dr. Longwell, she did not state that defendant only knew the victim for a short time before he started abusing her. While she began stating this, she corrected herself: "The second victim … he knew her for a -- knew her for a very short period of time, and clearly became -- I mean, his involvement with her, once he moved into the family house, shortly thereafter, he began to sexually molest her." Thus, her testimony was that the abuse began

---

[6]     Defendant also argues that Dr. Simon erred when concluding the offense was predatory based on defendant buying things for the victim. However, Dr. Simon did not testify to this at trial.

[7]     Evidence that defendant babysat the victim was also provided to the jury as Dr. Simon testified.

shortly after he moved into the same house as the victim, not shortly after meeting the victim.

Moreover, in addition to the opinions of the experts, there is evidence in the record of reasonable, credible, and of solid value from which the jury could conclude that the prior offense was predatory. There is evidence in the record, in the form of statements by the victim, that the abuse began when the victim was four and before defendant moved in, not, as alleged by defendant, when the victim was six. There is also evidence that defendant knew the victim for approximately a year and a half to two years before she turned six. This is evidence from which a jury could conclude that defendant did not know the victim long before the abuse began. Additionally, while defendant testified that he referred to the victim as his niece, when asked about his relationship with the victim before the abuse began, defendant stated that it was "normal." When asked to clarify, defendant stated "Well, … she played with her dolls, and I would show them movies and just let them be kids." There is also evidence in the record, in the form of a statement by defendant, that defendant told the victim that he loved her while he was abusing her, that he took her to McDonald's on one occasion after abusing her, and that he bought her "stuff" so that she would not tell her mother that defendant abused her.

Based on the evidence presented, a reasonable jury could conclude that at the time defendant began abusing the victim, the victim was either a casual acquaintance with whom no substantial relationship existed or that defendant promoted a relationship with the victim for the primary purpose of victimization. (§ 6600, subd. (e).) And while it is true that there was evidence to the contrary, "[i]n deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Finally, the jury was not required to find that a prior offense was predatory in order to find it likely that future sexual offenses would be predatory. (*People v. Torres* (2001) 25

Cal.4th 680, 687 ["[U]nder the Sexually Violent Predators Act the trier of fact at the trial is not required to find that a defendant's prior convictions involved predatory acts."].) And here, Dr. Simon testified that future offenses would likely be predatory because defendant's "access to the new victim pool would likely be nonfamilial victims." In his opening brief, defendant does not challenge this testimony. Moreover, given defendant's prior offenses, it is likely that those close to defendant will protect their children from defendant, limiting his access to new victims to strangers and casual acquaintances. Thus, even if there was not substantial evidence that the prior offense was predatory, there is substantial evidence from which a reasonably jury could find that future sexual offenses would likely be predatory.[8]

In conclusion, there is substantial evidence supporting the jury's finding that future sexual offenses would likely be predatory.

---

[8] Defendant does, for the first time in his reply brief, challenge this testimony on the ground that defendant's "family had to have fully known of his prior conduct with his sister, and they did nothing to limit access with the victim of the qualifying offense." We need not address this new argument. (*People v. Kocontes* (2022) 86 Cal.App.5th 787, 842, fn. 21 ["The general rule is we do not address new arguments presented in a reply."].) Moreover, this argument is not persuasive. Even if defendant's family knew of defendant's offense as a juvenile and did nothing to limit his access to the victim, based on the fact that defendant committed another sexual offense against a child as an adult, a reasonable jury could find that those close to defendant would now protect their children from defendant.

The other arguments in defendant's reply are equally unpersuasive. Defendant argues that the jury was not "entitled to draw psychological inferences from facts that the psychologists did not necessarily testify as having relied on," and that the People failed to show that the People's experts relied on the probation report in reaching their conclusions.

While it may be true in certain circumstances that a jury may not draw psychological inferences from facts that a psychologist did not necessary testify as having relied on, defendant has not cited to any authority, nor are we aware of any, suggesting that a jury can only find that a prior crime was predatory based on expert testimony alone.

Additionally, the record shows that the People's experts did rely on the probation report in reaching their conclusions. Both Dr. Simon and Dr. Longwell testified that they reviewed the probation report, and based on their testimony, this included facts in the report regarding the qualifying offense. Moreover, the jury was provided with a copy of the probation report and time to read it during the trial, so they had the ability to review the factual basis of the qualifying conviction themselves.

## DISPOSITION

The judgment is affirmed.

FRANSON, J.

WE CONCUR:


LEVY, Acting P. J.


MEEHAN, J.