Filed 8/11/22  P. v. Bortswick CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B314786 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. ZM016912) |
| v. | |
| RONALD BORTSWICK, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, James R. Dabney, Judge.  Affirmed.

Gerald J. Miller, by appointment, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, and Paul M. Roadarmel, Jr. and Steven D. Mathews, Supervising Deputies Attorney General, for Plaintiff and Respondent.

————————————

In June 2017, Ronald Bortswick admitted the allegations of a petition filed by the People to commit him as a sexually violent predator (SVP) under the Sexually Violent Predator Act (SVPA; Welf. & Inst. Code, § 6600 et seq.) and was committed to a California state hospital.[1]  In September 2020, Bortswick filed a motion for unconditional discharge pursuant to section 6605. Following a bench trial, the court found that Bortswick continued to meet the criteria for commitment and denied his motion.

On appeal, Bortswick argues the court improperly placed the burden of proof on him at trial.  He also asserts the court, when considering whether he would likely engage in sexually violent criminal acts if released, erroneously assessed Bortswick's propensity to reoffend on his historic predatory behavior instead of his current state of mind.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Five Qualifying Offenses*[2]

The first two qualifying offenses took place in close succession in September 1961 when Bortswick was 17 years old. Bortswick was convicted in Wayne County, Michigan of gross indecency, accosting a child for an immoral purpose and indecent

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

[2]    Descriptions of the offenses are taken from the 2010 petition for commitment, the 2010 reports prepared by Dr. Jack Vognsen and Dr. Robert M. Owen, the 2020 annual report prepared by Dr. Rebecca Martin and the trial testimony of Dr. Kathleen Longwell.

liberties with a child.  The victims were a nine-year-old female, Wanda, and her four-year-old brother, Eric, both strangers to Bortswick.

Wanda was playing outside with her siblings when Bortswick drove up and asked if she wanted to earn money counting homes on the block.  Wanda agreed and got into the car.  Bortswick drove into an alley and parked.  He told Wanda to get into the back seat and to take off her clothes.  Bortswick threatened if she did not comply, he would throw her clothes out the window.  Bortswick unzipped his pants, pulled out his penis, placed Wanda's hands on his penis and told her to play with it.  Bortswick told her to sit on his lap, and he placed his penis between her legs.  He pushed her head down and made her kiss his penis.  He told her to lie down, and he got on top of her.  Bortswick rubbed his penis against her until he ejaculated.  Bortswick admitted to police that he made Wanda touch and kiss his penis, and that he put his penis between her legs.

In a separate incident in September 1961, Bortswick fondled Eric's penis and forced Eric to touch his penis.[3]  Bortswick explained to one evaluator that he tried to have anal sex with Eric but not to the point of penetration; instead, he "rubbed [Eric's] buttocks" with his penis.  Bortswick stated the incident "was just written off as a curiosity stage for me."

Following those two convictions, Bortswick was remanded to a Michigan state hospital as a sexual psychopath.  While he was on a home visit approximately 18 months after commitment, Bortswick eloped and never returned to the hospital.

---

[3]    The record does not indicate how Bortswick came to be alone with Eric.

Bortswick's third qualifying offense occurred in May 1966 when he was convicted in Los Angeles County of committing lewd or lascivious acts (Pen. Code, § 288). The victim, eight-year-old Doris, was a stranger to Bortswick. Doris, her brother and a friend were walking home from school. Bortswick approached the children on foot and offered to pay them for helping to deliver newspapers. All of the children agreed, but Bortswick told the other two children they were too young, and they should go back to school. Bortswick escorted Doris to his car and drove her to his apartment. Doris was scared and asked when she could go back to school. Bortswick told her he would take her back after they got the newspapers. Once in the apartment Bortswick ordered Doris to take off her clothes. When she refused, he threatened to tear off her clothes. Doris removed her clothes. Bortswick ordered her to get on his bed and sexually assaulted her by forcing her to have intercourse. After he was done, Bortswick told Doris she could get dressed. Bortswick told Doris if she told anyone about what happened she would get in trouble. Bortswick walked with Doris some distance away from his apartment and left her alone on the sidewalk. Doris eventually walked to a friend's home. According to Dr. Vognsen's report, "a medical examination revealed torn areas of Doris' private parts, and the presence of semen."

Bortswick was sent to Atascadero State Hospital for a 90-day observation as a mentally disordered sex offender. After being found unamenable to treatment, he was sentenced to state prison for a period of one year to life. Bortswick was paroled in October 1971 and was discharged from parole two years later at the age of 30.

Bortswick's fourth and fifth qualifying offenses occurred in Los Angeles County in May 1990 when he was 46 years old. The qualifying offenses included convictions of seven counts of committing lewd or lascivious acts with a child under 14 years old (Pen. Code, § 288, subd. (a)), and one count of committing lewd or lascivious acts "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person" (*id.,* § 288, subd. (b)). The two victims were Bortswick's daughter, Angel, and his niece, Janice. Bortswick started sexually abusing Angel when she was nine years old, began regularly having intercourse with her before she was 12 years old and sexually abused her until she was 13 years old. Bortswick made Angel and Janice look at pornography while he watched them. Bortswick regularly had intercourse and oral copulation with 11-year-old Janice, and also sodomized her. He forced Angel to watch and photograph him and Janice engaging in sexual acts. At one point, Janice became pregnant by Bortswick and was taken by Bortswick's ex-wife to have an abortion. Bortswick also paid Angel and Janice to engage in sexual acts with him and to have sex with other men. Bortswick threatened the girls that he would tell their mothers if they did not continue to have sex with him. Bortswick was sentenced to 26 years in prison.

B.     *2010 Petition for Commitment*

On December 14, 2010, the Los Angeles County District Attorney filed a petition to commit Bortswick as an SVP under section 6000 et seq. The petition alleged that Bortswick suffered convictions in four cases involving various sex crimes over a 30-year period. Two psychologists, Dr. Owen and Dr. Vognsen,

evaluated Bortswick. They concluded Bortswick suffered from a mental disorder and, unless he received treatment and remained in custody, Bortswick was likely to engage in sexually violent predatory acts in the future.

On June 8, 2017, Bortswick admitted the allegations in the petition and was committed to a state hospital for an indeterminate term. His commitment was continued on June 7, 2018, and June 6, 2019.

C.     *2020 Motion for Unconditional Discharge and Show Cause Hearing*

On April 16, 2020, the Department of State Hospitals (Department) filed its annual report assessing Bortswick's civil commitment as an SVP pursuant to section 6604.9. The report and declaration, prepared by Dr. Rebecca Martin, a consulting psychologist at Coalinga State Hospital, concluded Bortswick suffered from pedophilic disorder and antisocial personality disorder but that he was unlikely to engage in sexually violent predatory acts if released. Dr. Martin explained Bortswick's age—76 years old at the time of the 2020 evaluation—negatively correlated with recidivism and factors such as "impulsivity, resistance to rules and overt acts of anger or aggression." Dr. Martin recommended Bortswick's unconditional release. Dr. Robert Withrow, the medical director at Coalinga State Hospital, agreed with Dr. Martin's evaluation and recommendation.

On April 22, 2020, the Department requested judicial review of Bortswick's commitment. On September 10, 2020, relying on Dr. Martin's and Dr. Withrow's recommendation, Bortswick filed a motion for unconditional discharge and a

6

request to set a show cause hearing. At the November 9, 2020 show cause hearing, Dr. Martin testified, and the trial court found probable cause that Bortswick's diagnosed mental disorder had changed, that he no longer posed a danger to the health and safety of others and that he was not likely to engage in sexually violent criminal behavior if released.

D. *The People's Expert Witness Testimony: Dr. Longwell*

Bortswick's bench trial commenced on June 9, 2021.[4] The People offered the testimony of Dr. Longwell.[5] Dr. Longwell works as a psychologist with the Department and conducts SVP evaluations. She has worked with the Department since February 1996 and has evaluated over 3,000 individuals, at least three-quarters of whom were sex offenders. She has prepared annual reports for approximately 50 individuals and has recommended unconditional release in one case due to an offender's medical condition.

Dr. Longwell explained that annual reports differed from initial commitment evaluations in that they focused on whether "the person's situation or condition [has] changed such that they no longer meet the criteria" for commitment. Dr. Longwell described the factors she typically considered when preparing an annual report, including treatment progress, any significant changes impacting the motivation or ability to commit sex offenses in the manner committed in the past and a well-

---

[4]    The parties waived their rights to a jury trial. (§ 6605, subd. (a)(3).)

[5]    The People retained Dr. Longwell after the show cause hearing.

7

documented treatment plan, if released.

Dr. Longwell evaluated Bortswick in March 2021. Dr. Longwell opined that Bortswick "still met the criteria [for an SVP] and it wasn't safe at this time [to release him], that he still presented a serious and substantial risk of sex offense, and that he had not made adequate progress in treatment." Dr. Longwell believed Bortswick would reoffend if released and that future offenses would be predatory in nature. In reaching her opinion, Dr. Longwell reviewed approximately 2,000 pages of the Department's documents, including Bortswick's treatment records and past evaluations. Bortswick declined to be interviewed by Dr. Longwell.

Dr. Longwell testified about Bortswick's qualifying offenses and observed the offenses involved "manipulation and threats" to lure children to engage in sexual activity. She diagnosed Bortswick with non-exclusive pedophilic disorder and antisocial personality disorder using the criteria set forth in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition.[6] Dr. Longwell had "no reason to believe that [Bortswick's] pedophilic disorder has been extinguished" simply "because he's been locked up for so long and hasn't had access to children." He "did not show any guilt or remorse" for his past crimes, which indicated to Dr. Longwell that Bortswick would likely reoffend if

---

[6] Dr. Longwell defined pedophilic disorder as requiring evidence of "a period of time of six months or greater of sexual urges, fantasies, or behaviors towards prepubescent children, which is generally defined as age 13 or younger" and antisocial personality disorder as "a condition where the person has persistently violated the rights and welfare of others, commonly but not always as evidenced by extensive criminal history."

released.  Bortswick last participated in a sexual offender treatment program in 2015, and Dr. Longwell testified that refusing and complaining about treatment indicated to her that Bortswick continued to suffer from antisocial personality disorder.  Bortswick also repeatedly acknowledged he had a problem but failed to seek treatment.  She noted Bortswick generally had been well behaved while in custody but that did not necessarily mean he would not reoffend if exposed to children and presented with an opportunity to molest a child.  She explained that antisocial personality disorder "makes it more difficult for you to have what we call prosocial traits that might mitigate . . . or prohibit from acting on pedophilic urges."

Dr. Longwell performed a standard risk assessment using actuarial tools including the Static-99R, the Static-2002R and the structured risk assessment-forensic version (SRA-FV), which assess the averages for recidivism.  Bortswick fell into the above-average range in the Static-99R assessment and into the well-above-average range in the Static-2002R assessment.  For the SRA-FV, Dr. Longwell placed Bortswick in the high treatment needs risk category.  She described Bortswick's case as "exceptional" in that he has "an extremely extensive history of sexual offending and repeat sex offending," which she explained supported her conclusion that Bortswick would likely reoffend if released.

Dr. Longwell testified that certain protective factors may mitigate a high risk of recidivism, such as the completion of a comprehensive sex offender treatment program or health issues, but these factors did not apply favorably to Bortswick.  Bortswick had not completed a comprehensive sex offender treatment program, and he had not suffered from any deterioration of

9

health that would minimize the risk of recidivism. Dr. Longwell explained that age was also a protective factor, but the significance of age was not the number in isolation; rather, it was important to consider whether a committed person's age impacted their health, vitality, sexual motivation and sexual ability. Although some of the existing data suggested a negative correlation between advanced age and the likelihood of recidivism, Dr. Longwell considered the data "weak" due to the small sample size available for elderly offenders. In any event, Dr. Longwell did not see any evidence that Bortswick's physical or sexual health had deteriorated since he was committed in 2017 and did not conclude there were factors that would mitigate Bortswick's risk of recidivism.

> E. *Bortswick's Expert Witness Testimony: Dr. Martin*

Bortswick offered the testimony of Dr. Martin. Dr. Martin became certified as a California licensed psychologist in 2016. She began working at Coalinga State Hospital in 2013 facilitating sex offender treatment groups and conducting treatment assessments. At the time of the trial Dr. Martin had completed annual reports for approximately 64 different patients and recommended conditional release or unconditional discharge for four of them.

Dr. Martin prepared an annual report for Bortswick each year from 2018 to 2021. In preparing those reports, Dr. Martin reviewed, among other documents, psychology progress notes, rehabilitation therapy notes, treatment plans, case histories, risk assessments, prior annual evaluations and evaluations from Bortswick's initial commitment. For her 2021 report Dr. Martin also spoke with staff at Coalinga State Hospital including

10

Bortswick's psychologist and rehabilitation therapist. Bortswick declined to submit to a full interview.

Dr. Martin explained the purpose of an annual review was to determine whether circumstances had changed such that an individual no longer met the criteria for commitment. In 2018 and 2019 Dr. Martin concluded Bortswick continued to meet the criteria for commitment because she "could not verify significant substantial change or difference that would have overridden his current commitment."

In 2020 and 2021 Dr. Martin changed her opinion. Consistent with her previous reports, she found Bortswick had qualifying offenses, and her "diagnoses remain[ed]" that he suffered from pedophilic disorder and antisocial personality disorder given these disorders were "lifelong" constructs. Dr. Martin concluded, however, that Bortswick no longer met the commitment criteria because he was unlikely to reoffend if released. One of the factors that caused Dr. Martin to change her opinion was that Bortswick had "participated in a fair amount of treatment" from July 2012 to February 2015 including group classes and a sex offender treatment program "with good progress and good participation." Dr. Martin acknowledged that Bortswick completed this treatment before her 2018 annual report, in which she concluded Bortswick's participation in further treatment prior to release was an important step to ensure the community was adequately protected. Dr. Martin also acknowledged that in her 2019 report she recommended further treatment for Bortswick. At trial Dr. Martin testified that while she "definitely would have preferred" Bortswick to continue treatment, she did not believe it was "mandatory" for him to do so before being unconditionally released given his age and risk

11

scores.

Dr. Martin also relied on information that during the several years leading up to her 2020 and 2021 reports, Bortswick did not show "behavior indicators of impulsivity or hypersexuality." She noted there were no serious incident reports documenting any major rule violations while Bortswick had been in custody, including no evidence Bortswick had been caught with pedophilic or pornographic material. She described his behavior with hospital staff as "affable and kind of cooperative." Given his participation in a treatment program and his behavioral indicators, and based on "evidence by a large body of research on elderly offenders," Dr. Martin opined that it was "a difficult case to say that [Bortswick's] likely to engage in future predatory sexual behavior."

Dr. Martin stated, "we just don't see a lot of sexual recidivism for offenders in their 70s." She explained that physiological and social emotional changes take place with age, including decreases in aggression, physical violence, impulsivity and risk taking. Beginning from the fifth decade of life there are "pretty consistent decreases in levels of testosterone," a "very important [hormone] when it comes to sexual arousal and desire." Regarding Bortswick's sexual health in particular, however, Dr. Martin was unaware of any information suggesting a decrease in his libido or in his mental arousal to prepubescent children. The only major health condition Dr. Martin identified in Bortswick's records was high cholesterol. She agreed the statement from her 2018 and 2019 reports that Bortswick "has no significant medical conditions that would reduce his libido or reduce his life" remained true for her most recent report. When questioned by the court, Dr. Martin agreed that from 2018 to

2020 the only change in Bortswick, which caused her to change her opinion about whether he should be released, was the fact that Bortswick had aged two years.

Dr. Martin performed a risk assessment using the Static-99R and SRA-FV actuarial tools. Dr. Martin rated Bortswick above average-risk on the Static-99R assessment. For the SRA-FV, which looks at dynamic risk factors including long-term vulnerabilities in a person's personality, Dr. Martin placed Bortswick in the above-average need range. She stated the risk of recidivism for someone over 70 years old is 3 percent and continues to decrease over time. Dr. Martin explained that actuarial tools overestimated recidivism risks for elderly offenders due to the underrepresentation in the sample group and that age should be considered separately and in addition to the risk assessment.

Dr. Martin testified that if released she did not believe Bortswick would reoffend in a predatory manner and any future victim would likely be familial.[7] She explained that his history of sexual offenses became increasingly "asexual" in that "[h]e chose easier target victims, lower risk victims, victims to whom he had easier access."

Dr. Martin acknowledged that Bortswick previously claimed he would not have molested again except for the "convenience" of his daughter, Angel; Bortswick also stated he

---

[7] According to Dr. Martin, an offense is predatory in nature if the offender and the victim do not have an existing substantial relationship.

molested Angel because she acted provocatively.[8] Dr. Martin testified that it appeared Bortswick had made progress demonstrating insight into his offenses since making those statements.

Regarding a post-release plan, Dr. Martin testified that Bortswick informed her that he believed he could have relationships with his two biological daughters and that he could live with either of them if needed.[9] According to Bortswick, no children were living in either home.

F.     *The Trial Court's Findings and Order*

Following the bench trial, the court issued a memorandum of decision denying Bortswick's motion for unconditional discharge. The court noted the existence of qualifying offenses and Bortswick's diagnosed mental disorder were not in dispute.

---

[8]     Dr. Martin's 2019 annual report summarized a 2002 interview with Bortswick in which he admitted to being a pedophile and the evaluator noted Bortswick "believes that he would not have been engaged with little girls except for the convenience of his daughter." Dr. Martin also summarized a 2013 interview with Bortswick in which he discussed his sexual abuse of Angel and Janice. He minimized his behavior by claiming the girls were pubescent and placed blame on the girls because they acted provocatively and suggested exchanging sex for money. Bortswick acknowledged they may have been psychologically harmed by his actions but stated Angel may have enjoyed herself as well because she experienced orgasms with him.

[9]     Dr. Martin did not identify the names of the two daughters Bortswick referenced. The record does not contain any additional information about Bortswick's post-release plan.

14

The expert witnesses, however, offered differing conclusions about whether Bortswick posed a danger to the health and safety of others and was likely to engage in sexually violent behavior if unconditionally released.  The court observed that since his commitment in 2017 "the only thing that has changed is that Mr. Bortswick is almost four years older" and even "Dr. Martin acknowledged that other than being a year older, there was not any evidence that Mr. Bortswick's physical condition had deteriorated between the 2019 review and the 2020 review." Bortswick had not participated in any organized activities since his commitment in 2017, and there appeared to be "no detailed post release plan in place."  Although it was appropriate to consider Bortswick's age in making the updated assessment, the court concluded "merely aging from seventy-four to seventy-eight, without more is not sufficient to raise a reasonable doubt that Mr. Bortswick is still likely to reoffend in a sexually violent manner if unconditionally released."

Bortswick timely appealed.

## DISCUSSION

### A.  *Relevant Law and Standard of Review*

The SVPA "authorizes the involuntary civil commitment of a person who has completed a prison term but is found to be a sexually violent predator . . . .  [Citations.]  The SVPA's purposes are "'to protect the public from dangerous felony offenders with mental disorders and to provide mental health treatment for their disorders.'"  (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 344.)

15

To establish an individual is an SVP, the People must prove beyond a reasonable doubt (1) the individual has been convicted of a qualifying sexually violent offense against one or more victims; (2) the individual suffers from a diagnosed mental disorder that makes him or her a danger to the health and safety of others in that (3) it is likely he or she will engage in sexually violent criminal behavior.  (§§ 6600, subd. (a)(1) [defining elements of an SVP], 6604 [imposing beyond a reasonable doubt standard]; see generally *People v. Roa* (2017) 11 Cal.App.5th 428, 443; *State Dept. of State Hospitals v. Superior Court, supra,* 61 Cal.4th at pp. 345-346.)

Once committed, an SVP is evaluated annually to consider "whether the committed person currently meets the definition of a sexually violent predator and whether conditional release to a less restrictive alternative, pursuant to Section 6608, or an unconditional discharge, pursuant to Section 6605, is in the best interest of the person and conditions can be imposed that would adequately protect the community."  (§ 6604.9, subd. (b).)  If the Department determines that a person no longer meets the definition of an SVP, or conditional release is in the best interest of the person and the community can be adequately protected if the person is so released, the person may petition the court for either conditional release (§ 6608) or unconditional discharge (§ 6605).  (§ 6604.9, subds. (d)-(f).)

"The burden of proof at the hearing [for unconditional discharge] shall be on the state to prove beyond a reasonable doubt that the committed person's diagnosed mental disorder remains such that he or she is a danger to the health and safety of others and is likely to engage in sexually violent criminal behavior if discharged."  (§ 6605, subd. (a)(3).)  "[A] person is

'likely [to] engage in sexually violent criminal behavior' if at trial the person is found to present a *substantial danger*, that is, a *serious and well-founded risk*, of committing such crimes if released from custody." (*People v. Roberge* (2003) 29 Cal.4th 979, 988.)  Evidence of a committed person's amenability to voluntary treatment "is relevant to the ultimate determination whether the person is likely to engage in sexually violent predatory crimes if released from custody." (*Id.* at p. 988, fn. 2.)

"'In reviewing the evidence sufficient to support a commitment under [the SVPA], "courts apply the same test as for reviewing the sufficiency of the evidence to support a criminal conviction."' [Citation.]  'Thus, this court must review the entire record in the light most favorable to the judgment to determine whether substantial evidence supports the determination below. [Citation.]  To be substantial, the evidence must be "'of ponderable legal significance . . . reasonable in nature, credible and of solid value.'"'" (*People v. McCloud* (2013) 213 Cal.App.4th 1076, 1088; accord, *People v. Reynolds* (2010) 181 Cal.App.4th 1402, 1407 [substantial evidence standard of review applies to review of motions for unconditional discharge].)  "'In reviewing the record to determine the sufficiency of the evidence this court may not redetermine the credibility of witnesses, nor reweigh any of the evidence, and must draw all reasonable inferences, and resolve all conflicts, in favor of the judgment.'" (*People v. Sumahit* (2005) 128 Cal.App.4th 347, 352 (*Sumahit*); accord, *People v. Westerfield* (2019) 6 Cal.5th 632, 713 [discussing the substantial evidence standard of review generally, outside the context of the SVPA].)

B.     *The Trial Court Did Not Err in Denying Bortswick's Motion for Unconditional Discharge*

Bortswick contends the trial court erred by inverting the burden of proof at trial and requiring him to prove he no longer met the criteria for commitment as an SVP when the burden should have been on the People to prove the criteria were met beyond a reasonable doubt.  Bortswick also contends the court erred by basing its decision on his past criminal sexual behavior rather than his current mental state.  Neither contention is persuasive.

1.     *The trial court applied the correct burden of proof*

Bortswick argues the People's expert, Dr. Longwell, incorrectly characterized the burden of proof during her testimony.  For example, Dr. Longwell stated, "I think that once somebody is committed, then I think the burden of proof falls on that individual to show why they should . . . be unconditionally release[d]."  She further explained that "the burden is on the evaluator to come up with a reason why they no longer meet the criteria if they're not doing treatment, if they don't have some severe, you know, physical impairment that affects them."

Irrespective of Dr. Longwell's statements, the trial court did not invert the burden of proof at trial.  The court repeatedly stated at trial that the People bore the burden of proof.  Before the expert witnesses testified the court explained that "the burden of proof to sustain the petition remains on the People" and "the burden remains the same that each of the allegations have to be proven beyond a reasonable doubt."  The court also made clear the People "can't rely on the finding from 2017 to

18

2018 in concluding that [Bortswick] presently has a mental disorder that qualified him as [an] SVP." Before closing arguments, the court asked to hear from the People "since they have the burden of proof." Additionally, the court's memorandum of decision correctly cited section 6605, subdivision (a)(3), for the burden of proof and explained "the question for the court to decide is whether the People have proven beyond a reasonable doubt that Mr. Bortswick's mental disorder has not changed to the extent that he is no longer a danger to the health and safety of others and unlikely to engage in sexually predatory behavior if released." The record establishes that the court understood, and properly applied, the burden of proof at trial.

> ### 2. *Substantial evidence of Bortswick's current circumstances supports the trial court's denial of his motion for unconditional discharge*

Bortswick contends the trial court improperly relied on his past conduct in denying his motion for unconditional discharge because the court used his commitment as an SVP and prior evaluations as a "base line" to determine whether circumstances had changed to support unconditional discharge. Bortswick also cites the prosecutor's closing argument that "[t]he past is a best predictors [*sic*] of the future" in support of his contention that the court's decision was based on past conduct.

Bortswick's contention is belied by the SVPA's statutory language and by his own expert witness's testimony. In determining whether unconditional discharge is appropriate, section 6605 instructs the trial court to focus on whether "the committed person's diagnosed mental disorder *remains* such that he or she is a danger to the health and safety of others" at the evidentiary hearing. (§ 6605, subd. (a)(2), (3) [italics added].)

19

Consistent with the statute, Bortswick's own expert explained, "[T]he purpose of [the annual review] is to determine whether or not things have changed such that the individual no longer meets the criteria [for commitment]." The court properly focused on the question of how Bortswick's circumstances have changed during his commitment.

Bortswick further argues the trial court failed to sufficiently consider his advanced age, which he interprets as a failure to consider his current circumstances. Bortswick relies on *People v. LaBlanc* (2015) 238 Cal.App.4th 1059, 1075 (*LaBlanc*), which stated "[t]he 'sheer passage of time' since an SVP's diagnosis and commitment may be a relevant consideration" in seeking release. *LaBlanc* is procedurally and factually inapposite. In *LaBlanc,* a trial court, without holding an evidentiary hearing, denied as frivolous a committed person's petition for unconditional discharge. (*Id.* at p. 1062.) The court of appeal reversed the order because the defendant demonstrated changed circumstances in his petition: he was 70 years old, had lost interest in sex after receiving radiation therapy for prostate cancer, had heart disease, had been provisionally diagnosed with multiple sclerosis, had difficulty getting an erection and had one testicle removed. (*Id.* at p. 1064.) The court of appeal explained that "advanced age and onset of serious medical conditions of an SVP are potentially relevant factors in determining whether a petition for unconditional release is frivolous, because various studies have concluded that recidivism rates decrease significantly among older male sex offenders." (*Id.* at p. 1076.)

In contrast to *LaBlanc,* here, the trial court held a full evidentiary hearing before determining that Bortswick continued to meet the criteria for commitment. The court did not reject

Bortswick's age out-of-hand or suggest age was irrelevant. Instead, it considered Bortswick's age but determined that age alone was insufficient to conclude Bortswick was not a danger to the health and safety of the community and would not likely engage in sexually violent criminal behavior if released. Unlike the defendant in *LaBlanc,* who in addition to his advanced age suffered from serious medical conditions and a decreased libido, there was no evidence that Bortswick had suffered any medical conditions that affected his sex drive or his ability to carry out sexual offenses in the manner of his qualifying offenses. Instead, the evidence at trial revealed that despite being four years older, Bortswick's health had not deteriorated since he was committed in 2017.

Lastly Bortswick asserts that the evidence of his current circumstances supports his unconditional discharge because since being committed in 2017, he has participated in sex offender and other treatment; he has not displayed any signs of impulsivity or hypersexuality; he has not engaged in any serious rule violations; and he has been cooperative with hospital staff. There is evidence in the record to support those contentions, except for Bortswick's position that he has participated in a sex offender treatment program since he was committed in 2017; the last time he participated in treatment was 2015. Nevertheless, Bortswick's insistence that we reverse the trial court's order is incorrect because on appeal we review the record for substantial evidence supporting the court's order, view the evidence in the light most favorable to upholding the order and refrain from reweighing the credibility of witnesses.

The existence of a qualifying offense was not in dispute. Both expert witnesses testified that Bortswick was currently

suffering from pedophilic disorder and antisocial personality disorder.  The testimony of the People's expert, Dr. Longwell, provided substantial evidence from which the trial court could conclude that Bortswick was a current danger to the health and safety of others, and it was likely that he would engage in sexually violent criminal behavior because of his diagnosed mental disorders.  (Evid. Code, § 411 ["the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact"].)  In reaching her opinion, Dr. Longwell relied on Bortswick's failure to complete a comprehensive sexual offender treatment program and to engage in any sexual offender treatment since his commitment in 2017; Bortswick's repeated acknowledgments that he had a problem but failed to seek treatment; and Bortswick's avoidance of treatment because he felt he was being mistreated.  (See *Sumahit, supra,* 128 Cal.App.4th at pp. 354-355 ["A patient's refusal to cooperate in any phase of treatment may therefore support a finding that he 'is not prepared to control his untreated dangerousness by voluntary means if released unconditionally to the community'"].)

Dr. Longwell also relied on the lack of evidence that Bortswick felt any guilt or remorse for his actions and the scores generated by risk assessment tools that indicated Bortswick had an above-average likelihood of recidivism.  While Dr. Longwell considered Bortswick's age as a protective factor, she determined age was not a mitigating factor in this case because there was no evidence that Bortswick's health had deteriorated in any way to impact his libido or his ability to commit sexual offenses in the manner he committed the qualifying offenses.  On this record, the trial court did not err in denying Bortswick's motion for unconditional discharge.

## DISPOSITION

The order is affirmed.

WISE, J.[*]

We concur:

PERLUSS, P. J.

SEGAL, J.

---

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.